IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:19-cv-03220-SKC

DEBORAH DURAN,
individually and as Personal Representative of the
Estate of Gilbert Duran,

    Plaintiff,

v.

DONALD CORENMAN, M.D., *et al.*

    Defendants.

---

ORDER GRANTING JOINT MOTION FOR DISCOVERY
TO CONDUCT *EX PARTE* INTERVIEWS WITH
CERTAIN HEALTHCARE PROVIDERS OF GILBERT DURAN [#52]

---

This case arises out of the death of Gilbert Duran, Plaintiff Deborah Duran's husband, on February 23, 2019. Mr. Duran was diagnosed with melanotic schwannoma cancer in his sacral spine, which ultimately metastasized and resulted in Mr. Duran's death. [#1.][1] Plaintiff brings claims of medical negligence against Mr. Duran's various medical providers, alleging Defendants' delay in diagnosing and treating her husband's cancer resulted in the cancer spreading and was the proximate cause of his death. [*Id.* at ¶¶53-54, 58-59, 63-64, 69-70, 74-75, 80-81.]

---

[1] The Court uses "[#__]" to refer to docket entries in CM/ECF.

1

This matter is before the Court on Defendants' motion requesting *ex parte* interviews with Vincent Herlihy, M.D., Scott Raub, D.O., Mark Pitcher, D.C., Victor Villalobos, M.D., Ph.D., Michael Finn, M.D., Trystain Johnson, M.D., and Elizabeth Carpenter, M.D. (collectively the "Providers"), based on *Bailey v. Hermacinski*, 413 P.3d 157 (Colo. 2018) and *Reutter v. Weber*, 179 P.3d 977 (Colo. 2007). [#52.] Each of these medical providers played a role in diagnosing Mr. Duran's cancer, treating him for his back pain (allegedly caused by the cancer), or treating him for his cancer diagnosis.

Defendants argue *ex parte* interviews are permissible in this case for three primary reasons: (1) Plaintiff waived the physician-patient privilege concerning the Providers by filing this lawsuit asserting claims of medical negligence resulting in death; (2) the Providers treated Mr. Duran solely for conditions that are at issue in this case; and (3) the risk any of the Providers possess residually privileged information is minimal. [*See generally* #52.] Plaintiff opposes the motion. [#53.] The Court has considered the Motion and related briefing, the case file, and the relevant law. No hearing is necessary. For the following reasons, the Motion is GRANTED.

## Analysis

The Colorado General Assembly has carved out two exceptions to the physician-patient privilege. *See Reutter*, *supra*; *see also Samms v. District Court, Fourth Judicial Dist. of State of Colo.*, 908 P.2d 520 (Colo. 1995). Relevant here, "a plaintiff in a personal injury case impliedly waives the physician–patient privilege

with respect to matters known to the physician that are relevant in determining the cause and extent of injuries which form the basis for a claim for relief." *Samms*, 908 P.2d at 525.[2] Here, Plaintiff concedes the privilege is waived as "to the cause of and extent of [Mr. Duran's] medical condition related to the failure to diagnose and treat the mass which was subsequently diagnosed as a melanotic schwannoma." [#53 at p.5.] And Plaintiff acknowledges these practitioners provided care and treatment for Mr. Duran related to the claims and allegations in this lawsuit.[3] [#53 at p.5.] But Plaintiff argues: (1) the Providers are likely to have residually privileged health information; (2) there is a potential for bias or undue influence; and (3) allowing the *ex parte* interviews would not promote judicial efficiency and instead, Defendants should depose the Providers. Plaintiff also proposes (should the Court permit these interviews) various "safeguards" for the Court to implement.

1. **Residually Privileged Materials**

Plaintiff argues the Providers have information beyond that which is related to this case. Specifically, she contends the Providers have extensive knowledge of

---

[2] The second exception applies to medical providers who were "in consultation with" the defendants. Defendants do not contend any of the Providers worked in consultation with them.

[3] In her conferral letter, Plaintiff argued *ex parte* conversations with Dr. Pitcher, D.C., were inappropriate because Dr. Pitcher only treated Mr. Duran for his back pain. [#52-2 at p.2.] Plaintiff does not raise this specific argument in her Response, but the Court, nevertheless, concludes Dr. Pitcher's treatment is relevant to this action because the source, treatment, and diagnosis of Mr. Duran's back pain is central to the medical negligence claims.

Plaintiff's medical history, family history, and "other information." First, Defendants are correct that family history is not privileged. *See Hartmann v. Nordin*, 147 P.3d 43, 52–53 (Colo. 2006) ("In revealing their medical conditions . . . the close family members would each have waived their physician-patient privilege as to the information they disclosed."). Second, with respect to the "other" privileged information, Plaintiff has offered no specifics as to what this information is and instead conjectures these interviews may result in "full medical record disclosure." Without more, there is no basis to find a high risk of disclosure of privileged information. Rather, based on the focus of each Provider's treatment, it would appear the waiver of the physician-patient privilege covers virtually all of what would have been discussed between the Providers and Mr. Duran. Finally, Defendants have agreed to use only the redacted medical records in these interviews and the Court incorporates this assurance into its Order. Therefore, to the extent any information unrelated to the present case is in the medical records, the risk of disclosure is minimal.

2. **Bias or Undue Influence**

The Colorado Supreme Court, in *Samms*, recognized the presumption "that both attorneys and physicians will conduct themselves ethically." 908 P.2d at 528. Physicians have an obligation to tell the truth and attorneys may not seek irrelevant information. *Id*. Here, Plaintiff argues she should be given notice and an opportunity to attend these interviews because there is a risk of undue influence and bias.

Plaintiff contends there is a risk of bias because several of the Providers work with or are supervised by various Defendants. But apart from the fact of this association, Plaintiff has not offered any specific evidence that would suggest the potential for bias. Rather, she speculates these providers will be motivated to protect themselves and their supervisors. Speculation alone is not enough.

Plaintiff also argues Drs. Finn, Raub, and Villalobos have not responded to her Counsel's communications and argues these doctors' willingness to speak with Defense Counsel and not Plaintiff's Counsel suggests bias and undue influence. But Plaintiff does not know (or has not shared) why these doctors have not responded. It is just as possible they are simply busy medical professionals operating in a world beset by a global pandemic. The Court will not make presumptions of bias based solely on a failure to return Counsel's phone calls or emails. Furthermore, there is no guarantee any of these providers will agree to speak with Defense Counsel. *Samms*, 908 P.2d at 528 ("a treating physician may decline to participate in *ex parte* discussions with defense counsel."). And if the Providers will not speak with Plaintiff's Counsel, then the discovery tools provided by the Federal Rules of Civil Procedure are available.

### 3. Judicial Efficiency

Plaintiff also argues *ex parte* interviews would be inefficient, costly, and lead to discovery disputes, and that Defendants should depose the Providers instead. This, however, is directly contrary to prevailing law. *Id.* at 526 ("Personal interviews are

5

an accepted informal method of discovery. . . . A rule permitting informal communications between a defense attorney and a plaintiff's treating physician promotes the discovery process by assuring that both parties have access to an informal, efficient, and cost-effective method for discovering facts relevant to the proceedings . . . . A contrary rule would encourage resort to expensive and time-consuming formal discovery methods when such methods could be avoided.") (Citations omitted). The Court finds no justification for requiring Defendants to bear the cost of depositions if they may be avoided.

\* \* \*

On this record, the Court finds Plaintiff has impliedly waived the physician-patient privilege as to the cause and extent of Mr. Duran's medical condition and the failure to diagnose and treat his terminal cancer. The Court also finds little potential for residually privileged information to be divulged in *ex parte* interviews of the Providers.

For these reasons, IT IS ORDERED Defendants may conduct *ex parte* interviews with Vincent Herlihy, M.D., Scott Raub, D.O., Mark Pitcher, D.C., Victor Villalobos, M.D., Ph.D., Michael Finn, M.D., Trystain Johnson, M.D., and Elizabeth Carpenter, M.D., without providing further notice to Plaintiff's Counsel or an opportunity to attend.[4]

---

[4] Defendants request this Court include a provision regarding any attempt on the part of Plaintiff's Counsel to interfere with Defendants' ability to conduct these interviews, such as communicating any objection to the Providers. Plaintiff's Counsel

IT IS FURTHER ORDERED in conducting these interviews Defendants and the Providers shall be limited to only the redacted version of Mr. Duran's medical records.[5]

DATED: May 14, 2021

BY THE COURT:

_____
S. Kato Crews
U.S. Magistrate Judge

---

is an officer of the Court and the Court trusts Counsel to act in accordance with duties incumbent to the role. Therefore, the Court concludes such an Order is currently unnecessary.

[5] Defendants make passing reference to a document they would like Plaintiff to produce unredacted. [#56 at p.8.] This is raised for the first time in the Reply and must be addressed pursuant to the Court's practice standards regarding discovery disputes.