IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Case No.: 19-cv-03220-SKC

DEBORAH DURAN, Individually and
as Personal Representative of the
ESTATE OF GILBERT DURAN,

    Plaintiffs,

v.

DONALD CORENMAN, M.D.;
SEAN BRYANT, M.D.;
JACK ANAVIAN, M.D.;
THE STEADMAN CLINIC,
PROFESSIONAL LLC; and
TRYSTAIN JOHNSON, M.D.

    Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION TO STRIKE
CERTAIN OPINIONS OF DEFENDANTS' EXPERT WITNESS
JOHN M. GROSS, M.D. PURSUANT TO F.R.E. 702 (DKT. 107)**

---

Before the Court is Plaintiff's Motion to Strike (Dkt. 107) which seeks to preclude certain opinions of Defendants' designated expert witness, Dr. Gross, under Fed. R. Evid. 702. The Court has jurisdiction over this matter under 28 U.S.C. § 1332(a).

The Court has reviewed the Motion, Defendants' Response, Plaintiff's Reply, and the abundant exhibit attachments to these filings. The Court has also reviewed

1

applicable law and entries from the docket. No hearing on the Motion is necessary. The Court denies the Motion for the reasons shared below.

## BACKGROUND

This is a medical malpractice action arising from the death of Gilbert Duran from a rare type of tumor known as a melanic schwannoma or a malignant melanotic Schwannian tumor. Plaintiff is Mr. Duran's widow. She brings this action individually and as personal representative of her late husband's estate. Her theory of the case is that Defendants delayed in diagnosing his schwannoma when they first discovered his tumor in 2015, which then metastasized and caused Mr. Duran's death in 2019.

Defendants have designated Dr. Gross as an expert who will testify regarding the pathology of Mr. Duran's tumor and will offer his opinion about the tumor's likely characteristics in 2015, which is when Plaintiff claims Defendants should have diagnosed Mr. Duran's schwannoma. Dr. Gross opines the tumor was malignant in 2015, which would have presented a poor prognosis at that time, including likelihood of loco-regional recurrence or future distant metastases and death even if the tumor had been treated or removed in 2015.

Plaintiff homes in on Dr. Gross' March 30, 2022 expert report, and argues his following opinion must be stricken under Rule 702:

> I will explain that the World Health Organization Classification of Tumors – Soft Tissue and Bone Edition (5th Ed.) updated the terminology to differentiate between typically benign or locally aggressive melanic schwannomas with rare metastatic potential and the

2

> updated terminology of malignant melanotic nerve sheath tumor (malignant melanotic Schwannian tumor) in 2020 to underscore that while their behavior is difficult to predict, more recent reports show evidence of aggressive behavior especially in those showing increased mitotic activity.

Dkt. 107 at p.2; *see also* Dkt. 107-1 (Dr. Gross' Report) at p.2. Plaintiff argues this opinion should be stricken because: (1) Dr. Gross has not produced any medical literature supporting his opinion that increased mitotic activity predicts malignancy; (2) Dr. Gross' opinion is irrelevant to the issues in this case since it is unsupported by medical literature; and (3) even if relevant, it should be precluded under Fed. R. Evid. 403.

Defendants note that Plaintiff does not challenge Dr. Gross' qualifications or experience as a pathologist.

> Rather, the sole basis of Plaintiff's argument is the assertion that Dr. Gross did not provide a source of literature stating mitotic rates *predict* metastasis. The term "predict" was first introduced by Plaintiff's counsel during deposition when counsel repeatedly asked questions utilizing the term. Dr. Gross explained that his opinion is a relationship of association or correlation with respect to mitotic rates and poor prognosis. As Plaintiff's counsel points out in their 702 motion, multiple sources of scientific literature support Dr. Gross's opinion, including the Torres-Mora study that Plaintiff identifies in the Motion and which was discussed at length during Dr. Gross's deposition.

Dkt. 114 at pp.3-4. Defendants argue Plaintiff "seeks to exclude an opinion Dr. Gross has not provided in his expert report nor in his deposition testimony that mitotic activity *predicts* metastases." *Id.* at p.6 (emphasis in original). Therefore, they argue Dr. Gross' opinions should be allowed because (1) Plaintiff mischaracterizes his

3

written opinion and deposition testimony; (2) the opinion is based on sufficient facts and data; (3) it is reliable; and (4) it is relevant. *Id.*

## Legal Principles

"The proponent of expert testimony bears the burden of showing that the testimony is admissible." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). A witness who qualifies as an expert by knowledge, skill, experience, training, or education may offer their opinions at trial if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

The district court performs an important gatekeeping function to assure expert testimony meets these requirements. *Macsenti v. Becker*, 237 F.3d 1223, 1230-34 (10th Cir. 2001). Even still, courts are mindful that "Rule 702 mandates a liberal standard" for the admissibility of expert testimony. *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006). The rejection of expert testimony has proven "the exception rather than the rule." Fed. R. Evid. 702, advisory committee notes (2000 amendments). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms.*,

4

*Inc.*, 509 U.S. 579, 596 (1993). The decision to admit or exclude expert testimony is committed to the sound discretion of the district court. *Summers v. Missouri Pacific Railroad System*, 132 F.3d 599, 603 (10th Cir. 1997).

## Analysis and Findings

The focus of Plaintiff's argument is the claim that Dr. Gross intends to testify that "increased mitotic activity in 2017/2018 predicts aggressive behavior of tumors and was predictive of the tumor in 2015." Dkt. 107 at p.2. At other times, Plaintiff refers to it as "Dr. Gross' opinion that mitotic rate predicts malignancy." *Id.* at p.3; *see also id.* at p.4 ("Dr. Folpe, Dr. Gross' mentor and the renowned expert in the field, disagrees with Dr. Gross' opinion and does not believe that mitotic rate is *predictive* of metastasis.") (emphasis in original); *id.* ("Plaintiff requests that this Court strike Dr. Gross' opinion regarding mitotic activity being predictive of aggressive behavior."). Further pressing the issue, Plaintiff equates "predicts" with "causation," arguing:

> There is a well-known saying that "correlation does not imply causation". Just because ice cream sales are highly correlated with shark attacks does not mean that consuming ice cream caused the shark attack. The same applies here. Just because increased mitotic activity correlated with metastasis, it does not mean that the metastasis was caused by the increased mitotic rate. . . .. Similarly, "associated with" is not the same as "predictive of". A person, such as a criminal defense attorney, can associate with another person who has committed a crime, but that does not predict that that attorney will now go out and commit a crime.

Dkt. 107 at p. 8.

5

The Court agrees with Defendants that Plaintiff seeks to exclude an opinion Dr. Gross does not appear to offer. The Court has reviewed Dr. Gross' written opinion and his deposition testimony. In pertinent part, the crux of his written opinion is that Mr. Duran's tumor "is extremely rare and is best considered a type of sarcoma;" "his tumor has aggressive traits and a clearly malignant histology;" "the aggressive characteristics present at the time of diagnosis in 2018 were most likely present in 2015, meaning that this tumor would have resulted in a very poor prognosis even if it were diagnosed in 2015;" and, based on the mitotic activity of this tumor, "tumors like Mr. Duran's . . . often recur following resection and . . . you cannot state to a reasonable degree of medical probability that resection and chemotherapy in 2015 would have had any impact on the outcome." Dkt. 107-1 at p.3. He offers, in summary,

> it is my opinion that due to the findings in 2018 which included L VI, an extremely high mitotic rate, and infiltration and destruction of bone, skeletal muscle, soft tissue and blood vessels, Mr. Duran's tumor possessed these same characteristics in 2015. It is also my opinion, given the very aggressive characteristics of this malignant tumor, that even if it was diagnosed and treated in late 2015 or early 2016, it was more likely than not to have recurred and metastasized.

*Id.* Nowhere in his report does Dr. Gross offer the opinion that a high mitotic rate predicts malignancy.

Even considering his deposition testimony, when counsel asked Dr. Gross whether he was saying that mitotic activity "is predictive of malignant behavior," Dr. Gross answered: "It has been associated with a worse prognosis." Dkt. 107-2 at depo. p.126, ll.1-5. When counsel pressed the "predictive" issue in later questioning, Dr.

6

Gross still testified: "That – as I said to you before, that has been the only histologic feature which has been suggestive or associated with poor outcome." *Id.* at depo. p. 127 ll.18-24; *see also id.* depo. p.128 ll.3-7 ("Again this study showed a – a correlation with – or they left it possible exception of – of a mitotic rate."); *id.* depo. p.130 ll.6-7 ("Secondly, this tumor showed an association with elevated mitotic rate and poor outcome."). Eventually, under insistent cross-examination, Dr. Gross appears to adopt the "predictive" term in some of his deposition answers. But the Court is not persuaded that his use of the term at later points in his deposition resulted in him modifying his opinion regarding his view of an "association," "correlation," or "suggestion" of high mitotic activity with a poor outcome.

The dispute here appears to be one of semantics. Plaintiff equates the phrase "predictive of" with "caused" or "causation." Dkt. 107 at p. 8. First, the Court does not find (whether in his written report or his deposition testimony) Dr. Gross' opinion to encompass a "prediction." Second, even assuming it does, in a medical sense "predictive" does not necessarily equate to causation. Helpful here, Stedmans Medical Dictionary defines "predictive value" as "an expression of the likelihood that a given test result *correlates* with the presence or absence of disease." Stedmans 966550 (2014) (emphasis added). The medical definition of "predictive value" is consistent with Dr. Gross' medical opinion and further supports this Court's understanding that his opinion is one of a correlation, not causation. *See Gaddy v. Terex Corp.*, No. 1:14-cv-1928-WSD, 2017 WL 11629328, at *4 n.6 (N.D. Ga. Sept. 21, 2017) ("The Court

7

agrees with Defendant that Plaintiff's objection here is 'a matter of semantics' and is not a reason to exclude Mr. Blair's reliable opinion[.]"); *Laue v. Voyles*, No. CV 13-31-BU-CSO, 2014 WL 12888669, at *6 (D. Mont. Apr. 18, 2014) ("Nevertheless, the probative force of the opinion 'is not to be defeated by semantics if it is reasonably apparent that the doctor intends to signify a probability supported by some rational basis. Doctors are not lawyers and may on occasion phrase medical opinions in medical, rather than legal, terminology.") (citation omitted); *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 F. Supp. 2d 1101, 1122 (M.D. Tenn. 2009), *aff'd in part on other grounds*, 432 F. App'x 435 (6th Cir. 2011) ("Again, the relevant issue is not precisely what Clark said in his expert report, or whether he has worded his opinions precisely to the defendants' satisfaction. It is notable that the defendants spend much more time picking at the semantics of Clark's expert report than they do arguing that he cannot offer relevant and reliable testimony[.]").

As mentioned, Plaintiff does not challenge Dr. Gross' qualifications or experience. And it is clear from his report that he bases his opinions not solely on cited medical literature and scientific publications, but also on his education, training, and experience as a pathologist. Nevertheless, the Court finds the Torres-Mora study and the World Health Organization Classification of Tumors – Soft Tissue and Bone Edition (5th Ed.), in addition to the other matters he relied upon as identified in his report, adequately support Dr. Gross' opinion to render it sufficiently reliable. His opinion regarding any association, suggestion, or correlation he

8

perceives between a poor prognosis and high mitotic activity present in the subject tumor is relevant to Plaintiff's claim of a delayed diagnoses and Defendants' defenses thereto. Further, on balance, the Court finds no basis in Fed. R. Evid. 403 to exclude Dr. Gross' opinion.

* * *

Defendants have met their burden to show that Dr. Gross' opinion satisfies the requirements of Fed. R. Civ. P. 702. Plaintiff is free, of course, to subject Dr. Gross to respectfully rigorous cross-examination on the points raised in her Motion and during Dr. Gross' deposition. The Motion is DENIED.

DATED: August 29, 2023

BY THE COURT:

_S. Kato Crews_ (signature)

S. Kato Crews
United States Magistrate Judge